UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
RAJOHINE JOHNSON,                                    :
                Plaintiff,              :
v.                                                   :
                                                     :
THE CITY OF NEWBURGH; POLICE CHIEF                    :
ANTHONY GERACI, individually and as                  :
employee of the City of Newburgh Police              :
Department; POLICE OFFICER KEVIN                      :
JODICE, individually and as employee of the          :
City of Newburgh Police Department; and THE          :
MID HUDSON NEWS,                                      :
                Defendants.             :
--------------------------------------------------------------x

**OPINION AND ORDER**

22 CV 4450 (VB)

Briccetti, J.:

       Plaintiff Rajohine Johnson brings this action against defendants The City of Newburgh ("Newburgh"), Newburgh Police Chief Anthony Geraci, Newburgh Police Officer Kevin Jodice (together, the "Newburgh Defendants"), and The Mid Hudson News ("MHN").  Plaintiff brings claims under 42 U.S.C. § 1983 and state law arising from an incident in which Jodice crashed his police car into plaintiff while he was riding his motorcycle and allegedly unlawfully searched plaintiff's backpack while he was unconscious.  Based on these events, plaintiff alleges Jodice unlawfully searched and seized plaintiff, used excessive force against him, and maliciously prosecuted him; that Jodice and Geraci denied plaintiff a fair trial and procedural due process by fabricating evidence; and that Newburgh has policies and customs of using excessive force and failing adequately to train, supervise, and discipline its employees.  In addition, plaintiff brings a state-law defamation claim against Geraci, Jodice, and MHN, alleging they published false statements in a police press release and news article depicting plaintiff as a criminal.

1

Now pending are (i) the Newburgh Defendants' motion to dismiss the first amended complaint in part pursuant to Rule 12(b)(6);[1] and (ii) MHN's motion to dismiss the first amended complaint pursuant to Rule 12(b)(6).  (Docs. ##35, 39).

For the reasons set forth below, the Newburgh Defendants' motion is GRANTED IN PART and DENIED IN PART, and MHN's motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

For the purpose of ruling on the motions to dismiss, the Court accepts as true all well-pleaded factual allegations in the first amended complaint, as well as in documents incorporated by reference in or integral to the first amended complaint, and draws all reasonable inferences in plaintiff's favor, as summarized below.

On September 7, 2021, plaintiff was driving a motorcycle towards his home in Newburgh when he noticed a vehicle following him.  According to plaintiff, he was "very scared" as he "did not know who it was, and the vehicle did not indicate at any time that it was a police vehicle."  (Doc. #32 ("FAC") ¶ 14).  Next, plaintiff allegedly saw flashing lights in his rear view mirror and "tried to slow down when he felt the rear of his motorcycle tire feeling like it was hit by the car behind him, causing Plaintiff to crash and lose consciousness."  (Id. ¶¶ 16–17).  Plaintiff alleges he later "regained consciousness at St. Luke's Hospital where he was admitted into the ICU Unit."  (Id. ¶ 17).  As a result of the crash, plaintiff allegedly "suffered a liver hematoma and contusion," as well as fractures in his legs and pelvis.  (Id. ¶ 21).

---

[1]     The Newburgh Defendants are not moving to dismiss plaintiff's Section 1983 excessive force claim against Officer Jodice under the Fourth Amendment.  (Doc. #38 at 1).

Several Newburgh police officers allegedly responded to the scene of the crash, and Office Jodice "went directly to seize and search plaintiff's back pack for [a] weapon although Plaintiff was on the floor, in pain, complaining, and crying." (FAC ¶ 18).  Plaintiff alleges the backpack was at least fifty feet away from him at this time and that he could not move because of his injuries.  According to plaintiff, body camera footage shows other officers telling Jodice plaintiff did not match the description of a robbery suspect they were pursuing, which Jodice allegedly acknowledged and further stated that "he was about to call the pursuit off when the crash occurred." (Id. ¶ 19).  Plaintiff further claims that after Jodice searched plaintiff and the backpack, Jodice did not find a weapon.  And plaintiff alleges Jodice "seized Plaintiff's DNA without a warrant to compare it with DNA on the alleged pistol" he found. (Id. ¶ 38).

Further, at some point on September 7, 2021, Jodice issued a Desk Appearance Ticket to plaintiff, which charged him with criminal possession of a weapon under state law, and required plaintiff to appear in Newburgh City Court on September 21, 2021, at 9:00 a.m. (FAC ¶ 28; see Doc. #46-1 ("DAT")).  Plaintiff states the criminal charges were ultimately "withdrawn and or dismissed," but he does not detail when or why this occurred. (Id. ¶ 65).

On September 8, 2021, despite officers purportedly being aware that plaintiff had been ruled out as a suspect of the robberies for which he was originally pursued, Chief Geraci and Officer Jodice issued a press release, which stated the following:

> On Tuesday morning 09/07/21 at approximately 0055 hrs. the Town of Newburgh had a robbery occur at a Gulf gasoline station on route 9W.  A description was provided of motorcycles that had fled the scene upon police arrival.  City of Newburgh Officers began to canvass the north end of the City of Newburgh and located a motorcycle committing multiple vehicle and traffic infractions in the area of South Street.  Patrol Officers attempted to make contact with the operator by initiating a vehicle and traffic stop, however the operator fled north on Grand Street at a high rate of speed and subsequently crashed in the area of 1 North Street.  The operator was identified as 31 year old Rajohine J. Johnson who suffered injuries as

3

a result of the crash.  He was transported to a local hospital by ambulance for treatment of his injuries.

Investigating Officers located a Glock, 9mm semi-automatic handgun and a magazine to the weapon loaded with 16 rounds of 9mm ammunition at the scene of the crash.

The investigation is ongoing and criminal charges related to this incident are forthcoming.  Anyone with information is asked to contact the City of Newburgh Detective Division at (845) 569-7509.

**<u>A criminal charge is merely an allegation that a defendant has committed a violation of the criminal law, and it is not evidence of guilt.  All defendants are presumed innocent and entitled to a fair trial, during which it will be the State of New York's burden to prove guilt beyond a reasonable doubt.</u>**

(Doc. #44-1 ("Press Release")).[2]

Thereafter, on September 9, 2021, MHN—a publication allegedly with "a wide circulation throughout the Mid-Hudson area, New York State, the USA, and the world" (FAC ¶ 11)—published an article regarding plaintiff's interaction with police entitled, "Suspected robber crashes motorcycle; cops recover gun." (Id. ¶ 26; Doc. #46-3 ("MHN Article")).  The MHN Article features a photo of a Newburgh police car, as well as a photo of a gun and magazine with the caption "Gun recovered at crash scene."  (MHN Article).  The MHN Article states:

NEWBURGH – Suspects in a Tuesday morning gas station robbery were apprehended by the City of Newburgh Police, according to a statement from city police.  The incident began at 12:55 a.m. on September 7 in the Town of Newburgh.

Sources say a Gulf Station on Route 9W in the town had been robbed and town police radioed a description of the suspects and their motorcycles to surrounding police departments.  City police officers increased their presence on the north end of the city and witnessed a motorcycle matching the description committing several traffic infractions near South Street.  City cops attempted to stop the biker, but he

---

[2]      In connection with their motions, defendants submit the Press Release and MHN Article. Plaintiff refers to and heavily relies on the content of these documents in his factual allegations in the FAC.  Accordingly, the Court has considered the Press Release and MHN Article as integral to the FAC in ruling on defendants' motions.  See <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010).

fled north on Grand Street at a high rate of speed.  The rider crashed near 1 North Street.

The 31-year-old rider, identified as Rajohine Johnson, was injured and transported to the hospital by ambulance.  Officers located a Glock semi-automatic 9mm handgun loaded with 16 bullets at the crash scene.

The investigation is ongoing and criminal charges related to this incident are forthcoming.  Anyone with information is asked to contact the City of Newburgh Detective Division at (845) 569-7509.

## DISCUSSION

I.      Standard of Review

        In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[3]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

        To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a

---

[3]      Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6),

a district court may consider the facts alleged in the complaint, documents attached to the

complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v.

MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  "Where a document is not

incorporated by reference, the court may nevertheless consider it where the complaint relies

heavily upon its terms and effect, thereby rendering the document integral to the complaint."  Id.

II.    Section 1983 Claim Against the City of Newburgh

Newburgh argues plaintiff's Section 1983 claim against it must be dismissed because

plaintiff fails to state a claim pursuant to the requirements of Monell v. Department of Social

Services, 436 U.S. 658 (1978) ("Monell").

The Court agrees.

A.    Legal Standard

Under Monell, a municipality is liable under Section 1983 only "when execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the [plaintiff's] injury."  436 U.S. at 694.

Thus, to assert a Section 1983 claim against a municipality, the plaintiff must show the existence

of an official policy or custom causing injury and a direct causal connection between the policy

or custom and the deprivation of a constitutional right.  Jones v. Town of East Haven, 691 F.3d

72, 80–81 (2d Cir. 2012).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the

following:  (i) "a formal policy officially endorsed by the municipality"; (ii) "actions taken by

government officials responsible for establishing the municipal policies that caused the particular

deprivation in question"; (iii) "a practice so consistent and widespread that, although not

expressly authorized, constitutes a custom or usage of which a supervising policy-maker must

have been aware"; or (iv) "a failure by policymakers to provide adequate training or supervision

to subordinates to such an extent that it amounts to deliberate indifference to the rights of those

who come into contact with the municipal employees." Brandon v. City of New York, 705 F.

Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

   "While Monell claims are not subject to a 'heightened' pleading standard beyond that

defined in Rule 8(a)(2), such claims nevertheless must meet the plausibility requirements of"

Bell Atlantic Corp. v. Twombly, 550 U.S. at 572, and Ashcroft v. Iqbal, 556 U.S. at 678.

Guzman v. United States, 2013 WL 5018553, at *4 (S.D.N.Y. Sept. 13, 2013) (denying motion

for partial reconsideration) (quoting Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination

Unit, 507 U.S. 163, 168 (1993)).  "In other words, boilerplate allegations will not suffice." Id. at

*3.  "The allegations that [a defendant] acted pursuant to a 'policy,' without any facts suggesting

the policy's existence, are plainly insufficient." Missel v. Cnty. of Monroe, 351 F. App'x 543,

545 (2d Cir. 2009) (summary order).

   B. Analysis

   Here, plaintiff alleges Newburgh (i) "failed to train and supervise its officers in the

amount of force needed to make arrests, and detain criminal suspects and also in denying fair

trial to criminal suspects" (FAC ¶ 99); (ii) "was deliberately indifferent in the training" of Chief

Geraci and Officer Jodice "concerning the use of excessive force and the denial of fair trial to

criminal suspects" (id. ¶ 100); (iii) "as a policymaker, knew, and had reason to know to a moral

certainty that its employees would be facing the use of force in arresting, detaining, and filing

criminal charges against criminal suspects" (id. ¶ 101); and (iv) "failed to train, to supervise, and discipline its employees" and "was deliberately indifferent to the rights of the population" of Newburgh including those of plaintiff.  (Id. ¶ 104).

In addition, plaintiff alleges Newburgh police employees have previously "mishandled situations that involved the use of excessive force in making arrest[s], detaining criminal suspects and[/]or denying fair trial to presumed innocent criminal suspect[s]."  (FAC ¶ 103).  In support, plaintiff cites eleven cases against Newburgh, each of which involved allegations of excessive force.  (See id.).  The two most recent of these cases were commenced in 2013, and the rest were filed between 2005 and 2009.

Regarding Newburgh's alleged failure to train and supervise officers and alleged deliberate indifference to citizens' rights, all of plaintiff's allegations are "boilerplate assertion[s]" which do not "allege a specific deficiency in the municipality's training," and thus are insufficient to state a claim for municipal liability.  See Rivera v. Westchester Cnty., 488 F. Supp. 3d 70, 78 (S.D.N.Y. 2020).

Likewise plaintiff's allegations regarding prior conduct by Newburgh police employees are insufficient.  Such allegations are limited to citations to other cases in this district involving Newburgh police, all of which concern arrests that occurred over ten years ago and at least eight years before plaintiff's arrest.  Plaintiff's "reference to [these] other cases involving allegedly similar unlawful conduct without any allegations as to the ultimate disposition of those lawsuits is insufficient to allege a practice so widespread and persistent as to amount to a policy or custom" of Newburgh.  Pryor v. City of New York, 2018 WL 4538904, at *4 (S.D.N.Y. Sept. 21, 2018); see, e.g., Walker v. City of New York, 2015 WL 4254026, at *9 (S.D.N.Y. July 14, 2015) (allegations regarding thirty-six lawsuits involving purportedly false arrests over thirteen years

"insufficient to plausibly support an inference of a widespread custom"); Tieman v. City of Newburgh, 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) (allegations regarding thirteen excessive force incidents over four years did not "plausibly demonstrate that the use of excessive force during arrest was so frequent and pervasive to constitute a custom"). And regardless, the Court may only take judicial notice of filings in other actions and thus, "[t]he fact that other plaintiffs have initiated other lawsuits against" Newburgh does not establish it "committed the wrongful conduct alleged." Pryor v. City of New York, 2018 WL 4538904, at *5.

Accordingly, plaintiff's Monell claim against Newburgh must be dismissed.

III.     Unlawful Search Claim

Jodice argues plaintiff fails to state a Fourth Amendment unreasonable search and seizure claim against him because plaintiff fails plausibly to allege any harm or invasion of privacy.

The Court disagrees.

A.     Legal Standard

The Fourth Amendment, which applies to the states through the Fourteenth Amendment, prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. It protects that which a person seeks to preserve as private, even in an area accessible to the public. See Katz v. United States, 389 U.S. 347, 351 (1967). The expectation of privacy must be one that "society is prepared to consider reasonable." O'Connor v. Ortega, 480 U.S. 709, 715 (1987).

"In any § 1983 claim predicated on the Fourth Amendment, the first step is to determine whether there has been a constitutionally cognizable search or seizure." Velasquez v. City of New York, 2012 WL 5879484, at *4 (E.D.N.Y. Nov. 21, 2012) (citing Medeiros v. O'Connell, 150 F.3d 164, 167 (2d Cir. 1998)). A Fourth Amendment "search" occurs when an "individual manifest[s] a subjective expectation of privacy in [a] searched object, and society is willing to

recognize that expectation as reasonable."  Kyllo v. United States, 533 U.S. 27, 27–28 (2001).  A

Fourth Amendment "seizure" occurs when police detain an individual under circumstances in

which a reasonable person would believe he or she is not "free to leave."  United States v.

Mendenhall, 446 U.S. 544, 554 (1980).

"Warrantless searches and seizures are per se unreasonable under the Fourth

Amendment—subject only to a few specifically established and well-delineated exceptions."

O'Rourke v. Huff, 43 F. App'x 436, 438 (2d Cir. 2002) (summary order) (quoting Katz v. United

States, 389 U.S. at 357).

B.      Analysis

Plaintiff alleges he lost consciousness at the time of the crash, and only regained

consciousness when he awoke at the hospital.  (FAC ¶ 17).  Plaintiff also alleges that, after the

crash, he was "on the floor, in pain, complaining, and crying,"[4] when Officer Jodice "went

directly to seize and search Plaintiff's back pack for a weapon," notwithstanding that the

backpack was allegedly at least fifty feet away from plaintiff (who could not move because of

the pain), no weapon was found on plaintiff's person, and Jodice allegedly already determined

plaintiff did not match the description of a robbery suspect the police were seeking.  (Id. ¶ 18).

Drawing all reasonable inferences in plaintiff's favor, he plausibly alleges a claim based

on the search of his backpack.  A person generally manifests an expectation of privacy when she

"vigilantly protects the right to exclude others."  Gudema v. Nassau Cnty., 163 F.3d 717, 722 (2d

Cir. 1998).  Courts have recognized a reasonable expectation of privacy in a closed, opaque bag.

---

[4]      This allegation seemingly contradicts plaintiff's assertion that he was rendered
unconscious by the crash.  (FAC ¶ 17).  Nonetheless, for purposes of this motion, the Court,
construing the FAC most favorably to plaintiff, infers that he awoke briefly from his
unconsciousness during the time of the alleged search.

New Jersey v. T.L.O., 469 U.S. 325, 337 (1985) ("[T]he Fourth Amendment provides protection

to the owner of every container that conceals its contents from plain view."); Bond v. United

States, 529 U.S. 334, 338–39 (2000) (defendant had reasonable expectation of privacy in opaque

bag he placed directly above his seat on a bus).

      Thus, construing the complaint most favorably to plaintiff, he plausibly alleges Officer

Jodice invaded plaintiff's reasonable expectation of privacy in his backpack, without a warrant

and allegedly without probable cause or reasonable suspicion.  Although it is possible plaintiff's

being unconscious following the motorcycle crash could provide exigent circumstances

justifying Jodice's search of the backpack to identify him under an emergency exception, the

Court cannot conclude the search was reasonable as a matter of law.  See, e.g., United States v.

Dunavan, 485 F.2d 201, 203–05 (6th Cir. 1973) (affirming conviction where police searched a

locked briefcase in an attempt to identify an unconscious individual and recognizing "a

legitimate life-saving purpose may provide another example of the exigent circumstances which

excuse failure to follow the warrant requirements of the Fourth Amendment").

      Accordingly, plaintiff's Fourth Amendment claim based on the search of his backpack

may proceed.[5]

---

[5]    The Court concludes plaintiff has abandoned his Fourth Amendment claim based on the
alleged seizure of his DNA, as he fails to address Jodice's arguments for the dismissal of this
claim in his opposition to the Newburgh Defendants' motion to dismiss.  (See Doc. #49 at 7–8).
See Felix v. City of New York, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) ("Courts may, and
generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's
arguments that the claim should be dismissed.").

    Regardless, in the FAC, plaintiff offers no details beyond alleging "Officer Jodice seized
Plaintiff's DNA without a warrant to compare it with the DNA on the alleged pistol found by the
officer."  (FAC ¶ 38; see id. ¶¶ 44, 46).  Plaintiff does not allege when, how, or why Jodice
seized his DNA.  This is "the epitome of a conclusory allegation" which "cannot substitute for
minimally sufficient factual allegations."  Chepilko v. Bushuyev, 2016 WL 6407479, at *7
(S.D.N.Y. Oct. 28, 2016) (dismissing Fourth Amendment search claim where plaintiff solely

IV.     Malicious Prosecution Claim

Jodice argues plaintiff fails to state a malicious prosecution claim against him because plaintiff fails adequately to allege (i) a criminal proceeding actually was initiated, and (ii) a restraint on his liberty.

The Court agrees plaintiff fails plausibly to allege a restraint on his liberty.

A.      Legal Standard

Section 1983 provides a claim for malicious prosecution, the elements of which are borrowed from state law.  Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).  Under New York law, to state a malicious prosecution claim, a plaintiff must plausibly allege "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010).

Further, "[b]ecause a malicious prosecution claim under § 1983 is grounded in the Fourth Amendment, the plaintiff must also establish another element in addition to the state tort requirements:  a post-arraignment deprivation of liberty that rises to the level of a constitutional 'seizure.'"  Coleman v. City of New York, 688 F. App'x 56, 57–58 (2d Cir. 2017) (summary order).

---

alleged police "illegally searched plaintiff's bag" without further details), report and recommendation adopted, 2016 WL 7106235 (S.D.N.Y. Dec. 5, 2016).

Accordingly, plaintiff's Fourth Amendment claim based on the alleged seizure of his DNA must be dismissed.

B.      <u>Analysis</u>

Plaintiff alleges Jodice maliciously prosecuted him beginning on September 7, 2021,

when Jodice "drafted the accusatory instrument and signed" a DAT charging plaintiff with

"criminal possession of a weapon in the Third, and Fourth Degree," which were "baseless"

charges.  (FAC ¶¶ 60–61).  The DAT allegedly required plaintiff to appear in court on September

21, 2021.  Jodice purportedly lacked probable cause because he "knew Plaintiff did not possess

any weapon."  (<u>Id</u>. ¶¶ 61, 63).  Further, according to plaintiff, "the charge of weapon possession

was withdrawn and[/]or dismissed," so the criminal proceedings terminated in plaintiff's favor

and "in a manner that the proceeding cannot be brought again."  (<u>Id</u>. ¶¶ 65–66).

Even if the Court were to assume the issuance of a DAT "represents the sort of legal

process required for a malicious-prosecution claim" and "even assuming that the unexplained

decision to drop charges prior to arraignment constitutes favorable termination," plaintiff fails

plausibly to allege a post-arraignment liberty restraint.  <u>Olaizola v. Foley</u>, 2019 WL 428832, at

*6 (S.D.N.Y. Feb. 4, 2019) (granting summary judgment to defendant on malicious prosecution

claim where plaintiff did not demonstrate independent liberty restraint arising from dropped

charges versus charges on which he was arraigned), <u>aff'd</u>, 797 F. App'x 623 (2d Cir. 2020).

First, although plaintiff alleges the DAT required him to appear in court on September

21, 2021, which "restricted" his "liberty" (FAC ¶ 89), he does not allege he actually appeared in

court—on that date or another date.  And plaintiff does not specify when the charges were

withdrawn or dismissed.  Further, plaintiff does not allege he was ever arraigned, required to post

bail, or subjected to court-ordered travel restrictions.  <u>See Mazzone v. Town of Southampton</u>,

283 F. Supp. 3d 38, 54 (E.D.N.Y. 2017).  Thus, "[g]iven the paucity of allegations," plaintiff

13

"has not alleged sufficient facts to establish that he was seized under the Fourth Amendment for malicious prosecution purposes." Id.

 Accordingly, plaintiff's malicious prosecution claim must be dismissed.

V.     Fabricated Evidence Claim

Geraci and Jodice argue plaintiff fails plausibly to allege a fabrication of evidence claim against them because plaintiff does not adequately allege a deprivation of a liberty interest, and as to Geraci, he was not personally involved in the conduct underlying this claim.

The Court disagrees.

Under Section 1983, a plaintiff "may sue for denial of the right to a fair trial based on a police officer's fabrication of information when the information fabricated is the officer's own account of his or her observations of alleged criminal activity, which he or she then conveys to a prosecutor." Barnes v. City of New York, 68 F.4th 123, 129 (2d Cir. 2023).  A fabricated evidence claim "allege[s] violations of the right to due process." Id.

"To succeed on a fabricated-evidence claim, a plaintiff must establish that an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." Barnes v. City of New York, 68 F.4th at 128.  A "plaintiff's prosecution can be a deprivation of liberty" and the "use of fabricated evidence in initiating a prosecution . . . may amount to a deprivation of liberty even in the absence of a conviction based on the fabricated evidence." Id. at 129–30.

Plaintiff alleges Chief Geraci and Officer Jodice "fabricated evidence . . . to trash Plaintiff's reputation."  (FAC ¶ 28).  In particular, Jodice allegedly searched plaintiff and his backpack and did not find a weapon or evidence related to the robbery, yet "[t]he officers

14

fabricated the information that Plaintiff had a pistol, and forwarded the information to the prosecutors."  (Id. ¶¶ 84–87; see id. ¶ 28).  And plaintiff alleges Geraci and Jodice knew plaintiff "was not the suspect of the robberies, and did not possess a weapon" (id. ¶ 92), but nevertheless "used the gun to make Plaintiff a suspect of robberies."  (Id. ¶¶ 93, 95).  As a result, Jodice issued plaintiff a DAT for weapons charges, which directed plaintiff to appear in court on September 21, 2021, thereby "restrict[ing]" his "liberty."  (Id. ¶ 89).  The weapons charges underlying the DAT were eventually withdrawn or dismissed.

Geraci and Jodice argue plaintiff's fabrication of evidence claim fails because, as with plaintiff's malicious prosecution claim, there are no facts alleged supporting a deprivation of plaintiff's liberty.  However, this is incorrect.  Claims for malicious prosecution and fabrication of evidence are subject to different standards because "fabricated-evidence claims allege violations of the right to due process under the Fifth and Fourteenth Amendments" and "malicious prosecution claims essentially allege violations of the Fourth Amendment right to be free from unreasonable seizure."  Barnes v. City of New York, 68 F.4th at 129.  Thus, plaintiff's allegation that defendants initiated a prosecution—in the form of issuing a DAT—based on the allegedly fabricated evidence that he had a firearm pleads a sufficient deprivation of liberty for purposes of his fabrication of evidence claim, even if it does not do so for purposes of his malicious prosecution claim.

Defendants also argue that, even if plaintiff states a fabricated evidence claim, he fails to plead the personal involvement of Geraci in that alleged constitutional violation.  However, the Court finds, at this early stage, that plaintiff plausibly alleges Geraci's personal involvement in the conduct underlying this claim.

To state a claim under Section 1983, a plaintiff must allege facts showing defendants' direct and personal involvement in an alleged constitutional deprivation.  See Spavone v. N.Y.S. Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").  Therefore, to state a claim under Section 1983 against government officials, "a plaintiff must plead . . . that each Government-official defendant, through the official's own actions, has violated the constitution."  Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020).

Here, plaintiff alleges "the officers" fabricated evidence and stated plaintiff had a gun, despite knowing plaintiff was not a robbery suspect.  (FAC ¶¶ 28–29).  The only police officer defendants in this action are Chief Geraci and Officer Jodice, and thus it is reasonable to infer that plaintiff alleges both of them participated in fabricating evidence.

Accordingly, plaintiff's fabrication of evidence claim may proceed.

VI.    Intentional Infliction of Emotional Distress Claim

Geraci and Jodice argue plaintiff fails plausibly to state a claim for intentional infliction of emotional distress ("IIED") because plaintiff does not plead sufficiently outrageous conduct to meet the high standard under state law and because other tort remedies remain available to plaintiff for the same conduct.

The Court agrees.

Under New York law, to state a claim for IIED, a plaintiff must plausibly allege:  "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  Chanko v. Am. Broad. Co., 27 N.Y.3d 46, 56 (2016).  The

"outrageousness element . . . is designed to filter out petty complaints and assure that the emotional distress is genuine," thus the standard for this element is "rigorous" and "difficult to satisfy." Id. at 57.  That is, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 56.

IIED is "an extremely disfavored cause of action under New York law that is routinely dismissed on pre-answer motion." Schaer v. City of New York, 2011 WL 1239836, at *7 n.4 (S.D.N.Y. Mar. 25, 2011).  And "courts in this Circuit have consistently held that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory." Caravalho v. City of New York, 2016 WL 1274575, at *23 (S.D.N.Y. Mar. 31, 2016) (collecting cases), aff'd, 732 F. App'x 18 (2d Cir. 2018) (summary order).

Here, plaintiff's IIED claim arises out of Geraci and Jodice's alleged use of "an amount of force on Plaintiff that was over the amount necessary to subdue" him such that they "seized Plaintiff with violence," despite purportedly knowing plaintiff "was not the suspect of the robberies." (FAC ¶¶ 123–126).  Such alleged "conduct fits well within the traditional tort theories of . . . malicious prosecution, . . . [and] assault and battery," thus the IIED claim "will not fly." Zhao v. City of New York, 656 F. Supp. 2d 375, 405 (S.D.N.Y. 2009) (adopting report and recommendation).  Accordingly,  plaintiff's "IIED claim must be dismissed as duplicative." See Centeno v. City of New York, 2019 WL 1382093, at *10 (S.D.N.Y. Mar. 27, 2019).

VII.   State Constitutional Claims

The Newburgh Defendants argue plaintiff's respondeat superior, assault, and battery claims under Article 1, Section 12, of the New York State Constitution must be dismissed because they are duplicative of his federal civil rights claims.

17

The Court agrees.

Under New York law, "the state constitutional tort" for damages based on official misconduct violating the state constitution "is usually available only in cases in which a plaintiff . . . has no alternative remedy." Biswas v. City of New York, 973 F. Supp. 2d 504, 522 (S.D.N.Y. 2013) (citing Lyles v. State, 2 A.D.3d 694, 695 (2d Dep't 2003), aff'd on other grounds, 3 N.Y.3d 396 (2004)), appeal dismissed on other grounds, 576 F. App'x 58 (2d Cir. 2014) (summary order).  Moreover, "[a]ctions for damages at common law and under § 1983 are both considered adequate alternative remedies that preclude the assertion of a claim for damages under the state Constitution." Id.

Here, plaintiff plausibly asserts claims for damages under Section 1983 for violations of the Fourth and Fourteenth Amendments on substantially the same grounds as plaintiff's state constitutional law assault, battery, and respondeat superior claims.  Thus, "plaintiff is not without a remedy with respect to [his] injuries . . . and [his] state constitutional tort claim is redundant and precluded." Biswas v. City of New York, 973 F. Supp. 2d at 522.

Accordingly, plaintiff's respondeat superior, assault, and battery claims under Article 1, Section 12 of the New York State Constitution must be dismissed.

VIII.   Defamation Claim

Geraci and Jodice argue plaintiff fails plausibly to state a defamation claim against them because the Newburgh Press Release does not contain defamatory statements of fact.[6]  MHN argues plaintiff fails plausibly to state a defamation claim against it because it is protected by the fair reporting privilege.

---

[6]     Geraci and Jodice also argue they are entitled to qualified immunity.  But because the Court agrees the Press Release does not contain any defamatory statements, the Court does not reach the question of whether Geraci and Jodice are entitled to qualified immunity.

The Court agrees.

A.      Legal Standard

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name.  Generally, spoken defamatory words are slander; written defamatory words are libel."  Albert v. Loksen, 239 F.3d 256, 265 (2d Cir. 2001) (quoting Hogan v. Herald Co., 84 A.D.2d 470, 474 (4th Dep't 1982)).  Under New York law, the elements of a defamation claim are:  "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege."  Id. at 265–66 (citing Dillon v. City of New York, 261 A.D.2d 34, 37–38 (1st Dep't 1999)).

In addition, under New York Civil Rights Law Section 74, "a libel action cannot be maintained for the publication of a 'fair and true' report of an official proceeding."  Geiger v. Town of Greece, 311 F. App'x 413, 417 (2d Cir. 2009) (summary order).  "New York courts have broadly construed 'official proceedings' under Section 74 to include statements by government officials, such as press releases."  Jeanty v. Cerminaro, 2023 WL 325012, at *2 (2d Cir. Jan. 20, 2023) (summary order) (citing Rodriguez v. Daily News L.P., 142 A.D.3d 1062, 1063–64 (2d Dep't 2016)).  Even when an "article uses more colorful language than [a] press release but . . . does not suggest more serious conduct than that actually suggested in the official proceeding," it is considered fair and true and thus "cannot provide a legal basis for [a] plaintiff's libel claim."  Geiger v. Town of Greece, 311 F. App'x at 417.

B.    Analysis

As to Geraci and Jodice, plaintiff fails plausibly to allege they published any false statement of fact.  As an initial matter, despite plaintiff's conclusory allegations that MHN is "the official communication organ of the Newburgh Police" (FAC ¶ 142), Geraci and Jodice did not write or otherwise publish the MHN Article, and cannot be held liable for statements made in that article.  And although plaintiff alleges in a conclusory fashion that Geraci and Jodice provided the Press Release to MHN, he offers no further factual support for the allegation they published the MHN Article.

Further, the Press Release does not state plaintiff robbed the gas station, that any charges were brought against plaintiff, or that plaintiff possessed a weapon.  And the Press Release emphasizes there was an ongoing investigation, no charges had yet been brought, and criminal charges are not evidence of guilt.  Thus, drawing all reasonable inferences in plaintiff's favor, he does not allege Geraci or Jodice made any false statement about him.

Accordingly, plaintiff's defamation claim against Jodice and Geraci must be dismissed.

Regarding MHN, plaintiff fails plausibly to allege a defamation claim because MHN is protected by the fair reporting privilege.  Plaintiff's allegations that he did not commit robbery and the weapons charges have been withdrawn or dismissed are irrelevant.  The MHN Article states motorcycles fled the robbery scene, police chased plaintiff's motorcycle because he was committing vehicular infractions, police recovered a weapon at the crash scene, the investigation was ongoing, and no charges had been brought.  (MHN Article).

Here, the facts reported in the MHN Article do not exceed those in the Press Release (an "official proceeding," for purposes of Section 74) and make clear no criminal charges had been lodged against plaintiff.  Generally, "a fair and true report admits of some liberality; the exact

words of every proceeding need not be given if the substance be substantially stated." <u>Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.</u>, 603 F. Supp. 2d 584, 589 (S.D.N.Y. 2009). Although it is reasonable to infer from the headline that plaintiff is a "[s]uspected robber" (MHN Article), a "newspaper need not choose the most delicate word available in constructing its headline; it is permitted some drama in grabbing its reader's attention, so long as the headline remains a fair index of what is accurately reported below." <u>Id</u>. at 589.  On September 9, 2021, it was a fair index of the official proceeding for MHN to describe plaintiff as a suspected robber, especially in light of the clarification that no charges were brought and police were still investigating.  Thus, plaintiff's defamation claim against MHN must be dismissed.

Accordingly, plaintiff's defamation claims must be dismissed.

## CONCLUSION

The Newburgh Defendants' partial motion to dismiss is GRANTED IN PART and

DENIED IN PART.  MHN's motion to dismiss is GRANTED.

All of plaintiff's claims are dismissed except for the (i) unreasonable search claim against

Jodice regarding plaintiff's backpack, (ii) excessive force claim against Jodice, and (iii)

fabrication of evidence claim against Geraci and Jodice.

By September 12, 2023, Geraci and Jodice shall file an answer to the first

amended complaint.

By separate Order, the Court will schedule an initial conference.

The Clerk is instructed to terminate defendants The City of Newburgh and The Mid

Hudson News from the docket, and terminate the motions.  (Docs. ##35, 39).

Dated: August 29, 2023
       White Plains, NY

                                        SO ORDERED:

                                        _____
                                        Vincent L. Briccetti
                                        United States District Judge

22