UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
RAJOHINE JOHNSON,                              :
                     Plaintiff,                 :
v.                                             :       **ORDER**
                                              :
POLICE CHIEF ANTHONY GERACI             :      22 CV 4450 (VB)
and POLICE OFFICER KEVIN JODICE,        :
                     Defendants.                :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Rajohine Johnson brings this action against City of Newburgh Police Chief Anthony Geraci and City of Newburgh Police Officer Kevin Jodice. Plaintiff asserts claims under 42 U.S.C. § 1983 (i) against Jodice for excessive force, (ii) against Jodice for unlawful search, and (iii) against Geraci and Jodice for fabrication of evidence.

Now pending is defendants' motion for summary judgment. (Docs. ##91, 95).

For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

The parties have submitted briefs, declarations with exhibits, and statements of material facts pursuant to Local Civil Rule 56.1. These submissions reflect the following factual background.

On September 7, 2021, plaintiff was working as a DJ at a house party in Newburgh, New York. Plaintiff left the house party on his motorcycle and headed to his home on Grand Street in Newburgh.

Around the same time, the City of Newburgh Police were informed that an armed robbery occurred in the area. The report stated the suspects of the armed robbery fled on

1

motorcycles.  Officer Kevin Jodice was driving a patrol car nearby along with Trainee Officer

Natasha Villegas.  Shortly after receiving the report, Jodice observed plaintiff's motorcycle

commit a traffic violation and initiated pursuit.

Plaintiff noticed a car following him closely.  He claims the vehicle was "tailgating" him

"approximately a car's distance" away from the rear tire of his motorcycle.  (Doc. #93-4 at Tr.

32).  Plaintiff saw the car's "bright headlights" but claims he did not see any flashing police

lights or otherwise recognize the car as a police vehicle.  (Doc. #96-1 at ¶ 11; Doc. #93-5 at Tr.

67–69).  Plaintiff was frightened by the car following him, so he drove past his house and

continued down Grand Street.  Plaintiff claims he was nearing a stop sign when he felt

something "hit" the rear tire of his motorcycle.  (Docs. ##93-4 at Tr. 45; 93-5 at Tr. 68–69; 96-1

at ¶ 13).  Plaintiff crashed and lost consciousness.  He regained consciousness at St. Luke's

Hospital and learned he sustained several injuries requiring surgery.

Jodice presents a different account of plaintiff's crash.  Jodice claims he activated his

emergency lights and sirens after watching plaintiff's motorcycle make a left turn without

signaling.  According to Jodice, plaintiff fled at a high rate of speed and passed several additional

stop signs.  Jodice pursued plaintiff at high speed and was about to terminate the pursuit when he

and Villegas observed the motorcycle crash along the side of the road.  Jodice and Villegas both

testified the patrol car was not close to the motorcycle when it crashed and never made contact

with the motorcycle.

Jodice and Villegas pulled over, exited their patrol car, and found plaintiff unconscious in

a field of debris on the yard of a nearby home.  Jodice activated his body-worn camera ("BWC")

when he exited the patrol car.  (Doc. #93-6 at Tr. 48–51).  Jodice testified he did not activate his

BWC before that point because he was "preoccupied" with driving his patrol car in pursuit of

plaintiff.  (Id. at Tr. 50–51).  The BWC records footage once it is activated and for the two minutes prior to activation.  (Id. at Tr. 51–52).  Jodice could tell plaintiff had sustained injuries. Several other officers arrived at the scene and called for medical assistance.

After first checking on plaintiff, Jodice observed a backpack near the curb, approximately ten to fifteen feet away from plaintiff.  At this time, plaintiff could not move and had no way of accessing the backpack.  Jodice testified he was not concerned for his safety.  Jodice briefly searched the backpack "for purposes of identifying" plaintiff.  (Doc. #93-6 at Tr. 28).  Jodice did not find plaintiff's identification in the backpack, and did not seize any other items from the backpack.  (Docs. ##94 at 14; 93-8 at 02:00–03:02).  Jodice later found plaintiff's wallet elsewhere at the scene.

Officers also located a firearm at the crash site, about ten to fifteen feet away from plaintiff.  (Doc. #101 ¶ 22).  Jodice observed "a substantial amount of grass and dirt in the magazine well, which would be consistent with the handgun impacting the grass at high speed." (Doc. #93-9 at ECF 2).[1]  Jodice seized the firearm.

That same day, Jodice filed an "incident report."  (Doc. #93–9 at ECF 1–3).  The incident report states that officers located a firearm near the crash site.  (Id. at ECF 2).  The report also notes officers "did not believe that this incident was related to [the nearby] robbery."  (Id. at ECF 3).  Jodice also completed an "arrest report."  (Id. at ECF 4).

On September 8, 2021, Chief Geraci submitted a press release about the incident.  (Doc. #93–17).  The press release explained that officers encountered plaintiff while canvassing for suspects of a robbery and stated officers found a firearm at the crash site.  (Id.).  The press

---

[1]    "ECF ___" refers to page numbers automatically assigned by the Court's Electronic Case Filing System.

release emphasized "[t]he investigation is ongoing" and charges had not yet been brought.  (Id.).

Geraci had access to Jodice's incident report.

The parties dispute what charges followed.  Plaintiff was charged by misdemeanor complaint with reckless driving and unlawfully fleeing a police officer.  (Doc. #101 at ¶ 18).

Plaintiff claims he also was issued a desk appearance ticket ("DAT") and charged with several crimes related to possession of a weapon.  (Doc. #96-1 at ¶ 18).  Defendants claim plaintiff was never charged and the DAT was withdrawn.  (Doc. #101 at ¶¶ 38–39).  According to Geraci, the DAT did not constitute a "charge," and plaintiff was never formally charged with criminal possession of a weapon.  (Doc. #93-15 at Tr. 45–48).

## DISCUSSION

### I.   Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).[2]

A fact is material when it "might affect the outcome of the suit under governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether

---

[2]   Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). "[T]he mere existence of a scintilla of evidence" supporting the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for it. Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes all facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor, on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

If a moving party offers video evidence "whose accuracy is unchallenged" in support of a motion for summary judgment, such evidence "should be credited by the court on such a motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party." Zellner v. Summerlin, 494 F.3d 344, 371

5

(2d Cir. 2007).  That said, "if the video evidence does not conclusively resolve material fact issues, summary judgment based on that evidence alone is not appropriate."  Alvear v. Kamel, 2023 WL 5593914, at *2 (E.D.N.Y. Aug. 29, 2023).

In general, the Court may not evaluate the credibility of witness testimony on summary judgment; this assessment is exclusively the province of the jury.  See Fincher v. Depository Tr. & Cleaning Corp., 604 F.3d 712, 725–26 (2d Cir. 2010).

II.     Excessive Force Claim

Jodice argues he is entitled to summary judgment on plaintiff's excessive force claim. The Court disagrees.

"A police officer violates the Fourth Amendment if the amount of force he uses in effectuating an arrest is objectively unreasonable in light of the facts and circumstances confronting the officer."  Lennox v. Miller, 968 F.3d 150, 155 (2d Cir. 2020) (citing Graham v. O'Connor, 490 U.S. 386, 397 (1989)).  Determining "whether an officer has used excessive force requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Kisela v. Hughes, 584 U.S. 100, 103 (2018).  "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.

Here, plaintiff argues Jodice used excessive force when Jodice hit plaintiff's motorcycle with his patrol car.  (Doc. #32 at ¶¶ 50–56).  Plaintiff testified he crashed because something "hit" the rear tire of his motorcycle.  (Docs. ##93-4 at Tr. 35–36; 93-5 at Tr. 68–69; 96-1 at ¶ 13).  And plaintiff maintains it was the vehicle he saw pursuing him closely—Jodice's patrol

car—that struck his motorcycle. (Doc. #93-5 at Tr. 68–69). A reasonable jury could conclude that effectuating arrest by striking a suspect's vehicle with a patrol car during a car chase constitutes an excessive use of force. See Hartman v. Cnty. of Nassau, 2008 WL 1923127, at *10–11 (E.D.N.Y. Apr. 28, 2008), aff'd 350 F. App'x 477 (2d Cir. 2009).

Jodice does not seem to dispute the latter point. (See generally Docs. ##94; 100). Instead, Jodice argues he is entitled to summary judgment because the record and video evidence conclusively demonstrate there was no contact between his patrol car and plaintiff's motorcycle, meaning the sole cause of plaintiff's crash was the way plaintiff operated his motorcycle. (Doc. #94 at 5–11).

The Court is not persuaded. Turning first to the BWC, although probative, this video evidence is simply not clear enough to warrant summary judgment. The BWC captures footage of Jodice's pursuit of plaintiff, but it depicts only the inside of the patrol car and a narrow view of the passenger-side corner of the windshield. (Doc. #93-8 at 00:00–00:24). This limited view does not change until Jodice exits the patrol car to find plaintiff on the grass in a field of debris. (Id. at 00:24–00:43). Critically, the BWC does not capture the road in front of the patrol car as Jodice is in pursuit and thus does not show how plaintiff's motorcycle crashed.

As such, the video evidence "does not conclusively resolve material fact issues." Alvear v. Kamel, 2023 WL 5593914, at *2. Nor does it "utterly discredit[]" plaintiff's testimony that the patrol car struck the rear tire of his motorcycle. Zellner v. Summerlin, 494 F.3d at 371. At bottom, the unclear BWC footage cannot resolve this material fact dispute and thus does not compel summary judgment for Jodice.[3]

---

[3]    To be clear, the Court does not accept plaintiff's strained argument that the BWC was not "on" until Jodice exited the patrol car. (Doc. #97 at 14). The uncontroverted record demonstrates Jodice activated the BWC when he exited the patrol vehicle after plaintiff's crash.

The other evidence offered by Jodice does not change this result.  Jodice's accident reconstruction expert, John McManus, opines "[plaintiff's] motorcycle was not struck in the rear by the pursuing police vehicle" and "the sole proximate causative factor of this accident was the manner in which [plaintiff] operated his vehicle."  (Doc. #93-11 at 6–7).  Nevertheless, "it is left to the jury to decide what weight to give the expert's opinion."[4]  Sabby Volatility Warrant Master Fund Ltd. v. Kennedy, 2025 WL 3640229, at *5 (S.D.N.Y. Dec. 16, 2025).

Jodice also offers that both he and Villegas testified there was no contact between the patrol car and the motorcycle, which crashed before their patrol car got close to it.  (Docs. ##93-6 at Tr. 53; 93-14 at ¶¶ 5–8).  However, this testimony stands in direct opposition to plaintiff's testimony that he was struck by the vehicle "tailgating" him.  (Docs. ##93-4 at Tr. 32; 93-5 at Tr. 68–69; 96-1 at ¶ 13).  Although Jodice argues plaintiff's version of events is not credible, "[c]redibility determinations . . . are jury functions, not those of a judge."  Kaytor v. Electric Boat Corp., 609 F.3d 537, 545–46 (2d Cir. 2010).

At bottom, construing the facts in the light most favorable to plaintiff, a reasonable jury could conclude Jodice's patrol car struck plaintiff's motorcycle.

In light of this factual dispute, Jodice's reliance on Galas v. McKee, 801 F.2d 200 (6th Cir. 1986), is misplaced.  In Galas v. McKee, plaintiff asserted Section 1983 claims for

---

(Doc. #93-6 at Tr. 48–51).  However, because the BWC records footage spanning two minutes before it is activated, the BWC recorded footage preceding and including the moment of plaintiff's crash.  (Id. at Tr. 51–52).  It just did not show the crash.

[4]     Plaintiff argues briefly that McManus's report is unreliable and based on "speculation." (Doc. #97 at 9).  This argument resembles one which would be made in a motion to preclude McManus's expert opinion pursuant to Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).  However, plaintiff has made no such motion.  Although the Court declines to conduct a Daubert analysis of McManus's expert opinion at this time, this decision is without prejudice to plaintiff advancing such arguments in a motion in limine.

unreasonable search and seizure after he crashed his car during a high-speed police pursuit.  Id.

at 201–02.  The Sixth Circuit ultimately concluded "the use of high-speed pursuits by police

officers is not an unreasonable method of seizing traffic violators."  Id. at 203.  However, in

Gallas v. McKee, there was no dispute that "there was no exercise of physical force," and instead

the plaintiff crashed because he "lost control of his automobile."  Id. at 202–03.  As detailed

above, here there is a genuine dispute of material fact as to whether Jodice struck plaintiff's

motorcycle with the patrol car and, if so, whether it was an excessive use of physical force.  The

Sixth Circuit said nothing about whether an officer uses unreasonable force when the officer

strikes a suspect's vehicle with a patrol car during a high-speed pursuit.  Rather, it considered

only "the minimal intrusion on a traffic offender's Fourth Amendment right occasioned by the

officer's participation in a high-speed pursuit."  Id. at 204.  In any event, this Court is not bound

by out of circuit authority.

Moreover, persisting factual disputes also foreclose granting Jodice summary judgment

on qualified immunity grounds.  Qualified immunity shields government officials whose

"conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "A

qualified immunity defense is established if (a) the defendant's action did not violate clearly

established law, or (b) it was objectively reasonable for the defendant to believe that his action

did not violate such law."  Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996).  "Defendants bear the

burden of establishing qualified immunity."  Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

In the context of an excessive force claim, "the question for the purposes of qualified

immunity is whether a reasonable officer could have believed that the use of force alleged was

objectively reasonable in light of the circumstances."  Lennon v. Miller, 66 F.3d 416, 425 (2d

Cir. 1995).  Thus, "in Fourth Amendment unreasonable force cases, unlike in other cases, the qualified immunity inquiry is the same as the inquiry on the merits."  O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 37 (2d Cir. 2003).

Here, Jodice recognizes plaintiff's Fourth Amendment right to be free from the use of excessive force during an arrest was clearly established.  (Doc. #100 at 9).  And, for the reasons detailed above, there remains a genuine dispute of material fact over whether Jodice used excessive force against plaintiff.  Because the Court cannot say as a matter of law that Jodice's actions were reasonable, he is not entitled to qualified immunity.[5]

III.    Unlawful Search Claim

Jodice next argues he is entitled to summary judgment on plaintiff's unlawful search claim.

The Court agrees.

The Fourth Amendment protects against unreasonable searches and seizures.  U.S. Const. amend IV.  "Warrantless searches and seizures are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  O'Rourke v. Huff, 43 F. App'x 436, 438 (2d Cir. 2002).  Jodice argues two such exceptions come into play here:  the search-incident-to-arrest exception, and the exigent circumstances exception.

---

[5]    Plaintiff also argues Jodice proximately caused the crash by violating department policies, such as failing to activate emergency lights, and engaging in high-speed pursuit over mere traffic law violations.  (Doc. #97 at 4).  The Court need not reach this argument because Jodice's motion fails for the reasons detailed above.

A.    <u>Search-Incident-to-Arrest</u>

The "search-incident-to-arrest exception" enables officers to search an "arrestee's person and the area within his immediate control—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." <u>United States v. Cancel</u>, 167 F. Supp. 3d 584, 591 (S.D.N.Y. 2016) (citing <u>Arizona v. Gant</u>, 556 U.S. 332, 339 (2009)). "It makes no difference whether the search occurs before or after the arrest, so long as it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." <u>United States v. Diaz</u>, 854 F.3d 197, 205 (2d Cir. 2017). This exception serves to "protect arresting officers and to safeguard[] any evidence of the offense of arrest that an arrestee might conceal or destroy." <u>United States v. Cancel</u>, 167 F. Supp. 3d at 591. "If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." <u>Arizona v. Gant</u>, 556 U.S. at 339.

At the outset, the Court notes the record is unclear as to whether plaintiff was ever actually arrested. Although Jodice argues his search of the backpack was justified as "incident to a lawful arrest" (Docs. ##94 at 12; 101 at ¶ 20), he also asserts plaintiff "was not arrested." (Doc. #101 at ¶ 13). Jodice previously testified he arrested plaintiff, and he filed an "arrest report" after the incident. (Docs. ##93-6 at Tr. 62; 93-9 at ECF 4). Jodice's position is perplexing—although a search incident to arrest can be performed before the formal act of arresting a person, a search cannot be justified as incident to arrest if in fact there is no actual arrest. <u>See</u> <u>Wilson v. Aquino</u>, 2005 WL 8171153, at *5 n.9 (N.D.N.Y. Oct. 4, 2005) (collecting cases).

Even assuming plaintiff was arrested at the scene of the crash, Jodice's search cannot be justified as incident to a lawful arrest because the backpack was not within plaintiff's immediate control. Jodice testified the backpack was approximately ten to fifteen feet away from plaintiff, who could not move and had no way of accessing the backpack. (Doc. #93-6 at Tr. 27, 55–56). Jodice also testified he was not concerned for his own safety at this point. (Id. at Tr. 56). Thus, because the backpack was "not within reasonable reach" of plaintiff, the search-incident-to-arrest exception does not apply. United States v. Cancel, 167 F. Supp. 3d at 591.

B.      Exigent Circumstances

The exigent circumstances exception applies "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable." Alexander v. City of Syracuse, 132 F.4th 129, 147 (2d Cir. 2025). "In determining whether exigent circumstances existed, the core question is whether the facts, as they appeared at the moment of [the search], would lead a reasonable, experienced officer to believe that there was an urgent need to render aid or take action." United States v. Laurent, 33 F.4th 63, 95 (2d Cir. 2022).

Here, plaintiff argues exigent circumstances did not exist because Jodice could not reasonably fear plaintiff would gain possession of a weapon or be able to destroy evidence located in the bag. (Doc. #97 at 14–15). Plaintiff is correct—the "mere presence of a firearm does not, on its own, create the urgency necessary for exigent circumstances." Harris v. O'Hare, 770 F.3d 224, 239 (2d Cir. 2014). And, as discussed, plaintiff could not move and had no way of accessing the backpack. (Doc. #93-6 at Tr. 55–56).

However, this argument ignores the other exigent circumstances present in this case. Critically, it is undisputed that plaintiff was unconscious and in need of medical attention. (Doc.

12

#101 at ¶ 11). And Jodice testified he searched the backpack in hopes of identifying plaintiff. (Doc. #93-6 at Tr. 28). Courts have held the need to identify an unconscious individual can present exigent circumstances justifying a warrantless search. See, e.g., United States v. Dunavan, 485 F.2d 201, 203–05 (6th Cir. 1973) (finding officer's search of a locked briefcase in attempt to identify an unconscious individual was justified by a "legitimate life-saving purpose"); Vauss v. United States, 370 F.2d 250, 252 (D.C. Cir. 1966) ("A search of one found in an unconscious condition is both legally permissible and highly necessary."); Pennington v. City of Rochester, 2020 WL 1151461, at *3 (W.D.N.Y. Mar. 9, 2020). Indeed, this Court observed at the motion to dismiss stage that "plaintiff's being unconscious following the motorcycle crash could provide exigent circumstances justifying Jodice's search of the backpack to identify him under an emergency exception." (Doc. #52 at 11). Now, in the absence of any genuine disputes of material fact relating to this claim, the Court can rule as a matter of law that Jodice's search of the backpack to identify plaintiff was reasonable and justified by exigent circumstances.

Even if there were a question as to whether the search was reasonable under the circumstances, Jodice would nevertheless be entitled to summary judgment on the basis of qualified immunity because plaintiff's rights were not clearly established, and it was objectively reasonable for Jodice to believe his conduct was lawful.

Again, qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Rights must be clearly established in a particularized sense, rather than at a high level of generality; and such rights are only clearly

13

established if a court can identify a case where an officer acting under similar circumstances was held to have acted unconstitutionally." Grice v. McVeigh, 873 F.3d 162, 166 (2d Cir. 2017).

Here, the Court cannot find—and plaintiff has not provided—a case that would have put Jodice on notice that his search, under these specific circumstances involving an unconscious individual in need of medical attention and identification, was unconstitutional. To the contrary, as explained above, courts have permitted similar searches to identify an unconscious individual. Thus, plaintiff's constitutional rights, under the circumstances here, were not clearly established.

Furthermore, even assuming plaintiff's rights in this situation were clearly established, Jodice is entitled to qualified immunity because it was objectively reasonable for him to believe his conduct was lawful. "The qualified immunity standard is forgiving and protects all but the plainly incompetent or those who knowingly violate the law." Grice v. McVeigh, 873 F.3d at 166. Here, it cannot be said that Jodice was plainly incompetent when he performed a brief search of plaintiff's backpack in an attempt to identify plaintiff, who was unconscious and in need of medical attention.

Accordingly, Jodice is entitled to summary judgment on plaintiff's unlawful search claim.

IV.    Fabrication of Evidence Claim

Finally, Geraci and Jodice argue they are entitled to summary judgment on plaintiff's claim for fabrication of evidence.

The Court agrees.

Under Section 1983, a plaintiff "may sue for denial of the right to a fair trial based on a police officer's fabrication of information." Barnes v. City of New York, 68 F.4th 123, 129 (2d Cir. 2023). "To succeed on a fabricated-evidence claim, a plaintiff must establish that an (1)

14

investigating official, (2) fabricated information, (3) that is likely to influence a jury's verdict,

(4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life,

liberty, or property as a result." Id. at 128  This case hinges on the second element of plaintiff's

claim.[6]

"The second element of a fair trial claim based on fabricated evidence requires a plaintiff

to prove that [defendants'] use of inaccurate information was knowing, as opposed to mistaken."

Davis-Guider v. City of Troy, 2024 WL 5199294, at *3 (2d Cir. Dec. 23, 2024).  Here, plaintiff

alleges defendants "realized plaintiff did not have any weapon" yet fabricated the information

that he had a firearm.  (Doc. #32 at ¶¶ 85–86).  He also alleges defendants "used the gun to make

plaintiff a suspect of robberies."  (Id. at ¶¶ 92–93).[7]

Defendants argue compellingly that they did not fabricate information because their

statements were literally true.  Harris v. City of New York, 222 F. Supp. 3d 341, 351 (S.D.N.Y.

2016) (explaining an officer fabricates evidence if they "knowingly supplied false facts to a

prosecutor").  Here, Jodice filed an incident report stating that officers located a firearm near the

crash site.  (Doc. #93-9 at ECF 2).  The report explained officers "did not believe that this

---

[6]      Defendants also argue plaintiff has not satisfied the fifth element of his claim because he
was never prosecuted for criminal possession of a weapon or robbery.  (Doc. #94 at 16–17).
However, as the Court explained in denying defendants' motion to dismiss, "plaintiff's allegation
that defendants initiated a prosecution—in the form of issuing a DAT—based on the allegedly
fabricated evidence pleads a sufficient deprivation of liberty."  (Doc. #52 at 15).  And there
remains a genuine dispute as to whether plaintiff was issued a DAT.  (See Doc. #101 at ¶ 39).  In
any event, for the reasons detailed below, defendants are entitled to summary judgment on this
claim.

[7]      The Court pauses to note that plaintiff does not identify with any specificity (i) which
exact statements he claims were fabricated, or (ii) where in the record those allegedly false
statements can be found.  (See generally Doc. #97).  In hopes of ensuring accuracy in its
presentation of plaintiff's arguments, the Court has construed plaintiff's allegations broadly and
has conducted a fulsome review of the record to identify any evidence which could plausibly
support those allegations.

incident was related to [the nearby] robbery." (Id. at ECF 3) (emphasis added).  Geraci had access to Jodice's incident report and submitted a press release explaining that officers encountered plaintiff while canvassing for suspects of a robbery.  (Doc. #93-17).  The press release identified that officers found a firearm at the crash site but clarified "[t]he investigation is ongoing" and charges had not yet been brought.  (Id.).

There can be no genuine dispute that these statements were factually accurate.  It is undisputed that officers located a firearm at the crash site, about ten to fifteen feet away from plaintiff.  (Doc. #101 ¶ 22).  Further, officers did indeed encounter plaintiff while canvassing for suspects of a nearby armed robbery.  (Id. at ¶¶ 1–6; see also Doc. #93-6 at Tr. 43).  And defendants plainly did not, as plaintiff alleges, "stat[e] that plaintiff was a suspect of a robbery." (Doc. #97 at 16).  Indeed, the Court previously dismissed plaintiff's defamation claim against Jodice and Geraci because defendants did not make any false statements about plaintiff.  (Doc. #52 at 19–20).  Plaintiff's fabrication of evidence claim now fails for the same reason.

Even assuming defendants made false statements—which they did not—plaintiff has not met his burden of identifying evidence showing defendants deliberately fabricated evidence.  See Rivera v. Jahmi, 801 F. Supp. 3d 129, 150 (E.D.N.Y. 2025).  Indeed, plaintiff has cited no record evidence in support of his allegation that defendants "maliciously suspected" him of crimes. (Doc. #32 at ¶ 81).  Thus, even viewed in the light most favorable to plaintiff, the record shows at most that defendants mistakenly identified plaintiff as the owner of the firearm or suspect of a robbery.  See Bennett v. Vidal, 267 F. Supp. 3d 487, 498–99 (S.D.N.Y. 2017) (granting summary judgment when plaintiff showed only that defendant officer "was mistaken in identifying him as a participant in" the crime).

Accordingly, defendants are entitled to summary judgment on plaintiff's fabrication of evidence claim.[8]

## CONCLUSION

The motion is GRANTED IN PART and DENIED IN PART. Plaintiff's excessive force claim against Jodice may proceed. All other claims are dismissed.

The Court will conduct a case management conference on **March 25, 2026, at 11:00 a.m.**, to be held at the White Plains courthouse, Courtroom 620, at which time counsel shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what good faith efforts they have made and will continue to make to settle this case. To be clear, all counsel are directed to discuss settlement in good faith prior to that date.

The Clerk is instructed to terminate defendant Geraci from the docket, and terminate the motion. (Docs. ##91, 95).

Dated: February 17, 2026
        White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

---

[8] Because the Court finds plaintiff has failed to offer evidence that defendants deliberately fabricated evidence, it need not consider defendants' alternative arguments that they are entitled to qualified immunity with respect to plaintiff's fabrication of evidence claim. But see Rivera v. Jahmi, 801 F. Supp. 3d at 160 n.40 (noting that qualified immunity is generally unavailable in fabrication of evidence claims); Garnett v. Undercover Officer C0039, 838 F.3d 265, 276 (2d Cir. 2016).